## UNITED STATE DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT WORSTER<br>Plaintiff | : | CIVIL ACTION NO:<br>3:02CV167 (EBB) |
| v. | : | |
| CARLSON WAGONLIT TRAVEL, INC.<br>Defendant | : | January 18, 2005 |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION

### I.    INTRODUCTION

On January 4, 2005, the Court granted the defendant's motion for summary judgment in the above-captioned matter, dismissing the plaintiff's claims that his former employer violated the Family and Medical Leave Act, 29 U.S. 2611 et seq. and, by its conduct, negligently inflicted emotional distress on the plaintiff.[1] The plaintiff now respectfully requests that the Court reconsider its grant of summary judgment to the defendant with respect to the plaintiff's FMLA and negligent infliction of emotional distress claims. As set out more fully below, the plaintiff contends that the Court committed clear errors of law and therefore requests that the Court reconsider its grant of summary judgment as to these two claims and enter an order denying that portion of the defendant's motion.

---

[1] While the Court's decision addressed all five counts of the plaintiff's complaint, the plaintiff is only asking that the Court reconsider its decision with regard to Counts 4 and 5. However, the plaintiff is reserving his right to file an appeal with regard to all of the claims surrounding his termination.

- 2 -

II.    **LAW AND ARGUMENT**

A.    **The Legal Standard**

Local Rule 7 (c) permits the filing of a motion for reconsideration in order to bring to the Court's attention, "matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order. "The Second Circuit has stated that reconsideration is appropriate only under certain conditions:  an intervening change in controlling law, new evidence, or the need to correct a clear error of law or to prevent manifest injustice." Lorenzetti v. Jolles, 120 F.Supp. 2d 181, 184 (D.Conn. 2000), citing, United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994).  Such a motion may not be used merely "to plug gaps in an original argument or to argue in the alternative once a decision has been made." Channer v. Brooks,  2001 WL 1094964 at *1 (D. Conn. Sept. 10, 2001).  Thus, "the function of a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence.'" LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D.Conn.1993) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir.1987), aff'd, 33 F.3d 50 (2d Cir.1994)).

In the instant case, the plaintiff respectfully brings to the Court's attention its error in regard to the dismissal of two counts of the Complaint.  First, the plaintiff believes that the Court erred in its analysis regarding the plaintiff's FMLA claim, particularly in light of the Department of Labor regulations pertaining to outside employment while on Family and Medical Leave.  Second, the plaintiff wants to bring to this Court's attention the recent decision of the Connecticut Appellate Court regarding

- 3 -

negligent infliction of emotional distress claims. In that case, the Appellate Court

clarified the standard for such a claim.  Under current law, this Court's determination as

to the appropriate standard for a claim of negligent infliction of emotional distress, is

plainly contrary to existing Connecticut law on this issue.

**B.**    **Discussion**

1.    The FMLA Claim

In his complaint, the plaintiff alleges that the defendant violated the Family and

Medical Leave Act by terminating his employment while on approved family and

medical leave.  According to the Court,

> .....Carlson explains that it terminated Worster's employment because it
> believed that Mr. Worster had committed fraud in obtaining paid leave and
> violated the Company's FMLOA policy by obtaining employment in Cape
> Cod.  Viewing the facts in the light most favorable to Mr. Worster, the
> Court cannot conclude that the termination occurred under circumstances
> from which one can infer discrimination.  Specifically, as discussed at
> length above, Mr. Worster has proffered no credible evidence that
> Carlson's reason for terminating his employment his pretextual.

(Dec. at p. 33)

The one factor that the Court repeatedly cited in support of Carlson's purported

legitimate non-discriminatory reason was the fact that Carlson fired Worster for violating

its FMLA policy by working at a second job.  "To the extent that the plaintiff argues that

Carlson did not uniformly enforce its policy, the proper evidence to bring forth would be

if Carlson knowingly allowed other employees to take a paid leave of absence while

working a second job, not the Company's past generosity toward the plaintiff in a

separate and distinct intermittent leave."  (Dec. at p. 22)  While this may be one way to

- 4 -

view the discrimination analysis, this is not the appropriate analysis for the FMLA claim,

particularly in light of 29 C.F.R. §825.312(h).  29 C.F.R. §825.312(h) states that,

> if the employer has a <u>uniformly-applied</u> policy governing outside or
> supplemental employment, such a policy may continue to apply to an
> employee while on FMLA leave.  An employer which does not have such
> a policy may not deny benefits to which an employee was entitled under
> FMLA on this basis unless the FMLA  leave was fraudulently obtained as
> in paragraph (g) of this section.

(Emphasis added).  Thus, it is clear from this regulation that the only time it is

permissible for an employer to have a policy prohibiting outside employment during a

Family and Medical Leave of Absence is where such a policy is "uniformly-applied."

The next inquiry for the Court should have been whether the defendant had such

a "uniformly-applied policy."  When conducting this inquiry, the Court should have

considered whether it was permissible for the employer to have such a policy regarding

secondary or outside employee only for employees on leave, when it does not apply

such a policy to its entire workforce.

However, even assuming that the Court found that a policy regarding secondary

or outside employment directed only at those employees on leave was permissible, the

next inquiry should have been whether the defendant's policy as to that group of

individuals was "uniformly applied."  Should 29 C.F.R. §825.312(h) permit a policy for

only those employees on leave, it still requires that, in order for the policy to be legal, it

must be "uniformly applied."  When determining whether the defendant had such a

policy, the Court need not look any further than the plaintiff.

In the instant case, the plaintiff provided clear evidence that the defendant did

not have such a uniformly applied policy as required by 29 C.F.R. §825.312(h).  It is

- 5 -

undisputed that the defendant permitted Worster to work at his secondary job while on intermittent FMLA leave.[2] While the Court accepts the defendant's differing treatment of the plaintiff while on intermittent versus full-time leave, it overlooks the fact that both leaves were FMLA protected and that the policy was admittedly not uniformly applied. The regulation makes no distinction between intermittent and full-time FMLA leave and the Court should have considered this regulation in making its determination.

Because there was clear evidence that the defendant's policy violated 29 C.F.R. §825.312(h), the Court did not have to reach the question of whether there was sufficient evidence of pretext as to the FMLA claim. The defendant relied solely upon its FMLA policy to justify the plaintiff's termination, and the Court accepted this argument. However, since the articulated reason given for the discharge decision is itself violative of the FMLA, the defendant has failed to meet its burden of establishing a legitimate non-discriminatory reason for its action.[3]

Thus, the plaintiff believes that by dismissing this claim, without any consideration of this regulation or its impact on the McDonnell-Douglas burden-shifting

---

[2] It should be noted that this leave also provided salary continuation - as a type of short-term disability benefit. In fact, at the time that the plaintiff was on intermittent leave he was receiving 100% of his salary. It was only when he went to full-time leave that he dropped to the 50% rate.

[3] The Court also relied heavily upon this policy in support of its conclusion that the plaintiff could not sustain his claims on the disability discrimination and retaliation claims. However, those issues will be addressed by any necessary appeal and are not the subject of this request for reconsideration. It should be noted that the issue of what constitutes a chronic condition or disability under the Connecticut Fair Employment Practices Act has been certified by the Connecticut Supreme Court in Caruso v. Siemens Business Communication Systems, Inc., 392 F. 3d 66 (2d Cir. 2004).

- 6 -

analysis, the Court has committed a clear error of law and should reconsider its decision.

### 2.    The Negligent Infliction of Emotional Distress Claim

In Count Five of the complaint, the plaintiff alleged that the defendant's conduct both as to the fact of terminating his employment and the manner in which the termination was carried out constituted negligent infliction of emotional distress.  On this claim, the Court reviewed the facts and granted summary judgment, stating that "in any event, none of these incidents that Worster points to is extreme or outrageous," citing Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 197.

In a decision issued on January 18, 2005, the Connecticut Appellate Court clarified that extreme and outrageous behavior is not a necessary element in a claim for negligent infliction of emotional distress.  Olson v. Bristol-Burlington Health District, 2005 WL 74092 (Conn. App. 2005).  In that decision, the Appellate Court first set out the appropriate standard for such a claim, and then noted the distinction between cases of intentional infliction of emotional distress and negligent infliction of emotional distress developed in its earlier cases.  After reviewing the prior distinctions that had been drawn, the Court stated "a claim based on the negligent infliction of emotional distress requires only that the actor's conduct be unreasonable and create an unreasonable risk of foreseeable emotional harm."  Olson, 2005 WL 74092 at *3  (Conn. App. 2005).

In light of this recent decision, the proper inquiry for the Court in the instant case is whether there was sufficient evidence from which a jury could conclude that the conduct was unreasonable and created an unreasonable risk of foreseeable emotional

- 7 -

harm. Thus, the Court should have applied this standard when assessing the facts in the light most favorable to the plaintiff, including, but not limited to, the following: the defendant's decision to inform the plaintiff of his termination via a letter addressed to Chester's Restaurant - a place that Human Resource employees suspected but were not sure he worked and with which the defendant did not have permission to communicate regarding the plaintiff's employment; the fact that this letter contained accusations of deceitful conduct; the defendant's failure to send this letter to the plaintiff's home address, where it had sent all prior correspondence; and the elimination of health insurance benefits within two months of learning of his HIV-positive status constituted sufficient facts of unreasonable conduct which created an unreasonable risk of foreseeable emotional harm. It is now clearly established as a matter of Connecticut common law that there is no requirement that the plaintiff demonstrate that the defendant's conduct also be extreme and outrageous. The Court's contrary holding was a clear error of law. Thus, for the above stated reasons, the plaintiff respectfully requests that the Court reconsider its decision granting summary judgment on the plaintiff's claim of negligent infliction of emotional distress.

## III.    CONCLUSION

Because the Court's ruling on the defendant's motion for summary judgment as to the plaintiff's FMLA and negligent infliction of emotional distress claims contain clear errors of law, as set out above, the plaintiff respectfully requests that the Court

- 8 -

reconsider its ruling and deny the defendant's motion for summary judgment as to

these claims.

RESPECTFULLY SUBMITTED
THE PLAINTIFF,

By:

Deborah L. McKenna ct17326
Gregg D. Adler ct05698
Livingston, Adler, Pulda Meiklejohn,
  & Kelly, P.C.
557 Prospect Avenue
Hartford, CT 06105-2922
(860) 233-9821

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Memorandum in Support of Plaintiff's Motion for Reconsideration has been mailed, first-class, postage pre-paid on this 18th day of January 2005 to all counsel of record as follow:


Karl M. Terrell
Stokes & Murphy, P.C.
3593 Hemphill Street
P.O. Box 87468
Atlanta, GA  30337




Deborah L. McKenna